## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **WILLIAM KAYE, Liquidating Trustee for the Gadzooks' Liquidating Trust,** | § § § | |
| **Appellant,** | § § | |
| **V.** | § § | NO. 3: 06-CV-01863-B |
| **HUGHES & LUCE, LLP,** | § § | |
| **Appellee.** | § § | |

## <u>MEMORANDUM ORDER</u>

In this bankruptcy appeal the Court must determine whether the bankruptcy court applied the proper legal standard in deciding to award attorney's fees and expenses to the law firm of Hughes & Luce, LLP ("H&L") in connection with H&L's representation of an equity committee during the course of a Chapter 11 proceeding. Based on this Court's interpretation of the relevant Fifth Circuit and statutory authority, the Court finds that the bankruptcy court applied an incorrect legal standard in awarding compensation to H&L. Accordingly, the Court will REVERSE the fee award and REMAND the action to the bankruptcy court for a reassessment of H&L's fee application.

### I.  Background

As the bankruptcy court's opinion contains a thorough and accurate account of the factual background of this case, the Court need not repeat those facts here. Nevertheless, a brief sketch of the relevant facts is helpful to give context to the legal issues at play. Gadzooks, Inc. ("Gadzooks" or the "Debtor"), a Texas corporation, is the debtor in the underlying bankruptcy proceeding. (R. 12). Gadzooks was a mall-based specialty retailer of casual apparel and related accessories for young

men and women. (*Id.*). In 2003, the company began to focus exclusively on clothing for young females. (R. 13). The shift in focus proved a failure. Sales declined, forcing the company to close stores and liquidate inventory. (*Id.*).

On February 3, 2004, Gadzooks filed a voluntary petition for Chapter 11 bankruptcy. (R. 12). On June 3, 2004, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee"), and on June 10, 2004, the Equity Committee filed an application to retain H&L as its legal counsel. (R. 13). The Official Committee of Unsecured Creditors (the "Creditors Committee") initially objected to H&L's employment as counsel for the Equity Committee, but later withdrew its objection, and the bankruptcy court ultimately approved H&L's retention. (R. 13-15).

Soon after the Equity Committee was formed, it engaged in a series of meetings with representatives of the Debtor. In time the parties came to accept that the Debtor faced two prospects: 1) have its assets sold off, likely at a substantial loss; or 2) attempt a recapitalization through a rights offering to existing shareholders. (R. 15). The Equity Committee championed the latter option. The Debtor also supported a rights offering provided that the offering would be guaranteed through a "backstop" process whereby funds would be raised to pay off the Debtor's secured debt, administrative expenses, and a percentage of unsecured claims. (R. 15-16).

After much maneuvering, the Debtor, the Equity Committee, and the Creditors Committee agreed to support the confirmation of a plan of reorganization that included a rights offering. (R. 16-18). The achieved consensus came undone, however, in December 2004 when it became apparent that the Debtor's sales numbers for the 2004 holiday season failed to meet projections by a substantial margin. (R. 20-21). In January 2005, the Creditors Committee requested that H&L stop

incurring fees and that the Equity Committee dissolve, which it did on January 11, 2005.  (R. 22).

In February 2006, the bankruptcy court confirmed a plan of liquidation proposed by the Debtor and

the Creditors Committee; the plan did not include a rights offering as urged by the Equity

Committee.  (*Id.*).

On August 3, 2005, H&L filed its Final Fee Application seeking the allowance of its fees and

expenses incurred through January 24, 2005, totaling $950,483.77.  (Appellant's Brief 3).  The

Creditors Committee objected to the application on August 26, 2005, and William Kaye, the

liquidating trustee of the Gadzooks' Liquidating Trust (the "Trustee"), joined in the objection on

April 26, 2006.  (*Id.*).  The objectors argued that H&L was not entitled to receive compensation

from the bankruptcy estate under the Fifth Circuit's decision in *Andrews & Kurth, L.L.P. v. Family

Snacks, Inc.* (In re *Pro-Snax Distribs., Inc.*), 157 F.3d 414, 420 (5th Cir. 1998), because the services

performed by the law firm did not, in the end, materially benefit the estate given that the rights

offering and plan on which it had worked never came to fruition.  *Pro-Snax* notwithstanding, the

bankruptcy court rejected the hindsight approach urged by the objectors, finding instead that the

express language of § 330 allows attorneys to receive compensation for services that were reasonably

likely to benefit the estate at the time they were rendered.  Accordingly, on August 18, 2006, the

bankruptcy court entered an order granting H&L's fee application in part, permitting H&L to

recover the fees and expenses it incurred up to and including December 13, 2004, at which point the

bankruptcy court determined that H&L had notice that any further work on the proposed rights

offering and plan would be in vain.  The court had found that prior to then, when the case was

seemingly on track for a consensual confirmation, the work done by H&L was necessary, reasonable,

and beneficial to the estate at the time it was performed.  (R. 35).  On August 28, 2006, the

3

bankruptcy court entered an order liquidating $916,727.37 in funds from the Debtor's estate to compensate H&L for its work on behalf of the Equity Committee.  (Appellant's Brief 4).

## II.  Issue

The subject of this appeal is whether, in awarding compensation to H&L from the estate, the bankruptcy court erred in considering whether H&L's services were beneficial to the estate at the time they were performed as opposed to looking at whether those services actually resulted in a material benefit to the estate - more of a hindsight approach.

## III.  Analysis

### A.      Standard of Review

The district court functions as an appellate court when reviewing a decision of the bankruptcy court, applying the same standard of review that an appellate tribunal would apply when reviewing a district court's decision.  *See* In re *Webb*, 954 F.2d 1102, 1003-04 (5th Cir. 1992).  A bankruptcy court's fact findings are reviewed for clear error while legal conclusions are reviewed de novo.  In re *Stonebridge Techs., Inc.*, 430 F.3d 260, 265 (5th Cir. 2005).  If a bankruptcy court's factual finding is premised on an incorrect legal standard, then such finding loses the insulation of clearly erroneous review and is instead reviewed de novo.  *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004).

### B.      11 U.S.C. § 330 – Past and Present

Prior to the enactment of the Bankruptcy Code in 1978, the award of compensation of professionals out of the bankruptcy estate was governed by the principles of economy of administration and conservation of the estate.  *See* In re *Briscoe Enters., Ltd. II*, 1991 WL 303809, at *4 (Bankr. N.D. Tex. August 16, 1991); In re *Allied Computer Repair, Inc.*, 202 B.R. 877, 881

(Bankr. W.D. Ky. 1996). A "spirit of economy" motivated courts to regard the conservation of the estate and the return to creditors as paramount factors to be considered in awarding compensation. *See* In re *Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 487 (Bankr. N.D. Ill. 1992) (citing 2 COLLIER ON BANKRUPTCY § 330.02 at 330-5). Attorneys representing parties involved in bankruptcy proceedings were considered public officers and their compensation paled in comparison to that available in ordinary civil practice. *See* In re *Prop. Co. of Am. Joint Venture*, 110 B.R. 244, 249-50 (Bankr. N.D. Tex. 1990). There was a pervading concern that the system, as configured, would encourage bankruptcy practitioners to seek more lucrative legal work outside the bankruptcy arena. *Id.*

In enacting the Bankruptcy Code in 1978, Congress jettisoned the principle of economy of administration. *See Briscoe Enters.*, 1991 WL 303809, at *4 (citing 124 Cong. Rec. H. 11, 091-2 (Sept. 28, 1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News, 6442) ("Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy case."). In its stead the Code implemented a system in which fee awards to bankruptcy professionals were to be based on the cost of comparable services in the non-bankruptcy context. In re *Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995); *Briscoe Enters.*, 1991 WL 303809, at *4. "The clearly stated purpose behind the change in the compensation standard was to encourage skilled attorneys to represent parties in bankruptcy." *Lifschultz*, 140 B.R. at 487.

The legal standard for providing compensation to bankruptcy professionals out of the bankruptcy estate was laid out in 11 U.S.C. § 330. To give context to the relevant portion of the Fifth Circuit's decision in *Pro-Snax* (and the only case cited therein), which (based on its articulation of a standard for determining the amount of fees due a law firm for services rendered to a bankruptcy estate) forms the centerpiece of the present appeal, it is helpful to briefly trace the various iterations

5

of § 330 and how the statute has been interpreted by the courts.  Section 330(a) originally provided

as follows:

> (a) After notice to any parties in interest and to the United States trustee and a hearing, . . . the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, *or to the debtor's attorney* –
>
> (1)  reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney . . . and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
>
> (2)  reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a) (emphasis added).  As indicated in italics, the former statute specifically included

a "debtor's attorney" within the category of professionals eligible to receive compensation out of the

bankruptcy estate.  Despite this explicit inclusion, courts divided on the question of whether a

debtor's attorney was still entitled to compensation *after* a Chapter 11 trustee had been appointed.

*See* In re *Xebec*, 147 B.R. 518, 523 (B.A.P. 9th Cir. 1992) (discussing split in the case law).  The

minority position prohibited a debtor's attorney from receiving compensation in such instances.  The

thinking was that once a trustee was appointed, the trustee's attorney supplanted the debtor's

attorney and any services thereafter rendered by the debtor's attorney were superfluous and could

not be said to benefit the estate.  *See* In re *NRG Res., Inc.*, 64 B.R. 643, 647 (W.D. La. 1986).  The

majority position, focusing on the fact that the plain language of § 330 provided for the debtor's

attorney to be compensated, held that the appointment of a trustee would not outright foreclose a

debtor's attorney from receiving a slice of the estate pie.  *See Xebec*, 147 B.R. at 523 (collecting

cases).  But these courts found that the post-trustee services of a debtor's attorney should be subject

to a higher level of scrutiny to protect against such work from being unnecessarily duplicative of the work being done by the trustee's attorney. *See e.g.* In re *Ginji Corp.*, 117 B.R. 983, 992 (Bankr. D. Nev. 1990) ("[T]he correct approach is not to disallow fees but to scrupulously inquire into such services so as to ascertain whether or not they were for the benefit of the estate or for some other interest."); In re *TS Indus., Inc.*, 125 B.R. 638, 643-44 (Bankr. D. Utah 1991) (partially allowing post-trustee fee application where services benefited the estate and no duplicative work had been done).

In *Xebec*, the Bankruptcy Appellate Panel for the Ninth Circuit held that a debtor's attorney was eligible to receive compensation for services rendered after a trustee was appointed provided that the debtor's attorney could prove that the services provided resulted in an "identifiable, tangible, and material benefit to the estate." *Xebec*, 147 B.R. at 523-24. This is the so-called "benefit analysis" approach. The *Xebec* Court proffered the following guidelines for assessing the benefit to the estate: "(1) whether the debtor's attorney's actions duplicated the duties of the trustee or the trustee's counsel under 11 U.S.C. § 1106; (2) whether the services have in fact, obstructed or impeded the administration of the estate; and (3) whether the debtor attorney's actions are consistent with the debtor's duties under 11 U.S.C. § 521." *Id.* at 523 (citations omitted).

In 1994, Congress enacted the Bankruptcy Reform Act of 1994 ("Reform Act"), which renumbered various provisions in the Code and amended § 330 to read in pertinent part as follows:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

7

(B) reimbursement for actual, necessary expenses.

\*\*\*

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

\*\*\*

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

\*\*\*

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for –

(i) unnecessary duplication of services; or

(ii) services that were not –

(I) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case.

11 U.S.C. § 330(a).

In drafting the Reform Act, Congress left out a "debtor's attorney" from the group of professionals eligible for an award of compensation under § 330(a)(1). This omission generated a split among the circuits. Some circuits found that the reworded statute is unambiguous and precludes an award of compensation to counsel for debtors after the appointment of a trustee.[1]  *See* In re *Equip. Servs., Inc.*, 290 F.3d 739, 742 (4th Cir. 2002); In re *Am. Steel Prod.*, 197 F.3d 1354, 1356 (11th Cir. 1999); *Pro-Snax*, 157 F.3d at 425. Others viewed the omission of "a debtor's attorney"

---

[1]Even under this approach attorneys for a debtor-in-possession may still receive compensation from the estate *before* the appointment of a trustee as, within the meaning of § 330(a), they would qualify as a "professional person" employed by a trustee under § 327. This is because, under 11 U.S.C. § 1107(a), a debtor-in-possession enjoys all of the rights and powers of a trustee, including the power to employ professional persons under § 327. In re *Smith*, 317 F.3d 918, 925 n.1 (9th Cir. 2002).

from § 330(a)(1) as the result of a scrivener's error, concluding that a debtor's attorney may still receive compensation after the appointment of a Chapter 11 trustee.  *See* In re *Top Grade Sausage, Inc.*, 227 F.3d 123, 130 (3d Cir. 2000); In re *Century Cleaning Servs., Inc.*, 195 F.3d 1053, 1061 (9th Cir. 1999); In re *Ames Dep't Stores, Inc.*, 76 F.3d 66, 71-72 (2d Cir. 1996).  In *Lamie v. United States Trustee*, 540 U.S. 526 (2004), the United States Supreme Court resolved the circuit split, finding in favor of those courts which held that a debtor's attorney is not eligible for compensation under § 330(a)(1) for post-trustee services.  *Id.* at 534-35.

**C.      *Pro-Snax***

The background facts of *Pro-Snax* can be simplified as follows.  The underlying bankruptcy case at issue there was initiated when creditors filed an involuntary Chapter 7 bankruptcy petition against the debtor.  *Pro-Snax*, 157 F.3d at 416.  The case was later converted to Chapter 11 upon the debtor's consent.  *Id.*  A Chapter 11 trustee was appointed soon thereafter.  *Id.*  The debtor proposed a plan of reorganization, but the bankruptcy court denied confirmation of the plan based largely on the objections raised by creditors.  *Id.* at 416-17.  The case was then converted back to a Chapter 7 proceeding.  *Id.* at 417.

The law firm of Andrews & Kurth ("A&K") provided legal services to the debtor both before and after the case had been converted to Chapter 11.  *Id.* at 416-17.  Upon A&K's fee application, the bankruptcy court awarded A&K $30,000 in fees and $7,500 in expenses.  *Id.* at 417 n.4.  The district court reversed the award on the ground that § 330 precluded A&K from being compensated from the assets of the estate for work performed after the Chapter 11 trustee had been appointed.  *Id.* at 419.  The district court remanded the case to the bankruptcy court, however, for a recalculation of fees in light of the creditors' concession that A&K was entitled to compensation for

9

the work it performed before the Chapter 11 trustee was appointed.  In so doing, the district court instructed the bankruptcy court to consider the "backdrop of the American Rule, any statutory exceptions to that rule applicable in this case, and the usual standards for the award of fees to be paid by other parties to the litigation." *Family Snacks, Inc. v. Andrews & Kurth, L.L.P.* (In re *Pro-Snax Distribs., Inc.*), 212 B.R. 834, 839 (N.D. Tex. 1997).  The case was later appealed to the Fifth Circuit.

The Fifth Circuit divided its discussion of the merits into two parts.  It first took up the issue of "whether a Chapter 11 debtor's attorney may be compensated for work done after the appointment of a trustee under § 330(a) of the Bankruptcy Code." *Pro-Snax*, 157 F.3d at 416.  After considering the statutory language of § 330, congressional intent, and public policy, the Court ultimately concluded that § 330, on its face, clearly precludes any award of fees to a debtor's attorney after a Chapter 11 trustee has been appointed.  *Id.* at 425-26.  This holding was later vindicated by *Lamie*.

In the second, briefer part of the opinion, of relevance here, the Fifth Circuit discussed the standard to apply in awarding compensation to A&K for the services it rendered to the debtor before the trustee was appointed.  The Court considered two possible tests advocated by the parties.  A&K urged the use of a "reasonableness" test – "whether the services were objectively beneficial toward the completion of the case *at the time they were performed*." *Id.* at 426 (emphasis added).  The creditors, on the other hand, advanced a hindsight approach – whether the services actually "*resulted* in an identifiable, tangible, and material benefit to the bankruptcy estate." *Id.* (emphasis added).  With little analysis or explanation, the Fifth Circuit adopted the stricter "hindsight" or "material benefit" measure, expressing its disinclination "to hold that any service performed at any time need only be reasonable to be compensable." *Id.*

10

**D.      Was the Bankruptcy Court Correct in Viewing the *Pro-Snax* Court's Adoption of the Material Benefit Test as Dictum?**

The bankruptcy court concluded that it was free to apply the reasonableness test rejected by the Fifth Circuit because it found that the Fifth Circuit's discussion of the appropriate standard to apply was mere dictum.  (R. 32).  There are several types of dictum, the most common of which are obiter dictum and judicial dictum.  "Obiter dictum" is an observation or "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential."  In re *Hearn*, 376 F.3d 447, 453-54 (5th Cir. 2004) (quoting BLACK'S LAW DICTIONARY 1100 (7th ed. 1999)); *see also Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 385-86 (5th Cir. 1998) (quoting Charles W. Collier, *Precedent and Legal Authority*, 1988 WIS. L. REV. 771, 773 (1988)) ("That which is 'obiter dictum' is stated only 'by the way' to the holding of a case and does not constitute an essential or integral part of the legal reasoning behind a decision.").  "Judicial dictum", on the other hand, "refers to an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision."  BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 275 (2nd ed. 1995) (citing *Cerro v. Metal Prods. v. Marshall*, 620 F.2d 964, 978 n. 39 (3d Cir. 1980)). While neither form of dictum is binding on a lower court, of the two, judicial dictum is generally entitled to greater weight.   *See Arar v. Ashcroft*, 414 F.Supp.2d 250, 277 n.11 (E.D.N.Y. 2006) (stating that judicial dictum "must be given considerable weight and can not be ignored in the resolution of [a] close question."); *Am. Overseas Co. v. United States*, 17 Cust. Ct. 121, 124 (Cust. Ct. 1946) ("While neither [type of dictum] is binding as a decision, judicial dictum is entitled to much greater weight than the other and should not be lightly disregarded.").

11

Given these basic definitions, the Court is doubtful of whether the Fifth Circuit's adoption of the material benefit or hindsight test was dictum at all.  The language of the opinion certainly suggests that the panel thought it was pronouncing on a point of law that was essential to the determination of a portion of the case.  For example, the *Pro-Snax* Court stated that the appeal charged it with the "task" of "deciding" which standard to apply to A&K's services rendered before the trustee was appointed.  *Pro-Snax*, 157 F.3d at 426.  The Court further described its adoption of the material benefit test as a "determination" and a "holding".  *Id.*

Even if the Court were to find that the Fifth Circuit's adoption of the material benefit test was mere dictum, it nevertheless was of the "judicial dictum" variety.  That is, even if the *Pro-Snax* Court's discussion of the issue was not essential to its decision, the fact remains that the parties *argued* for the application of competing tests and that the Fifth Circuit *decided* that the test urged by the creditors was the correct one.  *Id.*  Indeed, the panel's discussion of the issue had a decidedly prescriptive cast to it which leaves little doubt that the Fifth Circuit *intended* to establish a legal standard for lower courts to follow in future cases.  *Id.* ("We determine today that the stricter test is the appropriate measure.").  Given the clarity of the language used in *Pro-Snax*, this Court believes that it is constrained by its pronouncements.  *See Piscottano v. Murphy*, 2005 WL 1424394, at *3 (D. Conn. June 9, 2005) (district court considered itself bound by Second Circuit's statements of law where panel opinion made clear that its decision was intended to provide circuit guidance to lower courts).

As pointed out by the Trustee, lower courts in this Circuit, save for the bankruptcy court's decision in this case, have uniformly interpreted *Pro-Snax*'s acceptance of the material benefit test as representing the governing law in the Fifth Circuit.  *See e.g.* In re *Weaver*, 336 B.R. 115, 118-19

12

(Bankr. W.D. Tex. 2005) ("The Fifth Circuit Court of Appeals [in *Pro-Snax*] has set the standard by which bankruptcy courts must judge all attorneys fees for persons representing the bankruptcy estate."); In re *Quisenberry*, 295 B.R. 855, 865 (Bankr. N.D. Tex. 2003) ("In the Fifth Circuit, this test does not look to the reasonableness of services or expenses at the time such services or expenses are incurred."); In re *Senior Living Props., LLC*, 2004 WL 1683147, at *1 (Bankr. N.D. Tex. April 28, 2004) ("To determine the hours reasonably expended, the court must assess the tangible benefit provided to the bankruptcy estate by the services rendered."); In re *Needham*, 279 B.R. 519, 523 (Bankr. W.D. La. 2001) (stating that *Pro-Snax* "requires a court to investigate 'whether [counsel's] services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate.'"); In re *Harbor Fin. Group, Inc.*, 2001 WL 1041785, at *3 (N.D. Tex. Sept. 5, 2001) (finding that bankruptcy court correctly applied the *Pro-Snax* test to a fee application and that "it would have 'erred in taking a lenient view of the standard.'") (quoting *Pro-Snax*, 157 F.3d at 426).

E.      **Is the Hindsight Test Adopted by the *Pro-Snax* Court Incompatible with § 330?**

In the end it appears that the bankruptcy court, without explicitly saying so, simply disagreed with *Pro-Snax*'s adoption of the hindsight test. Admittedly, it is somewhat difficult to evaluate the *Pro-Snax* Court's reasoning for so doing, as the panel did not explain *why* it chose to embrace the stricter hindsight measure, and it cited only one case – In re *Melp, Ltd.*, 179 B.R. 636 (E.D. Mo. 1995) – in its discussion of the issue. *Melp* involved the question of whether, under the version of § 330 in effect prior to the amendments made by the 1994 Reform Act, a debtor's attorney was entitled to compensation *after* an operating trustee had been appointed. *Id*. at 639-40. Following the Bankruptcy Appellate Panel for the Ninth Circuit's decision in *Xebec*, the *Melp* Court applied the benefit analysis approach, which looked to whether the attorney's services resulted in an

13

"identifiable, tangible, and material benefit to the estate." *Id.* at 640.

      This, of course, was the same standard adopted in *Pro-Snax*, where the Fifth Circuit was charged with deciding which standard to apply to the services rendered by a debtor's attorney *before* the appointment of a trustee. *Pro-Snax*, 157 F.3d at 426. The rationale for the stricter measure as applied by *Melp* and *Xebec* was that legal work performed after the appointment of a trustee should be more closely scrutinized "because such work may be unnecessarily duplicative of work done by the trustee." In re *Smith*, 317 F.3d 918, 926 (9th Cir. 2002). This rationale, however, seemingly does not apply to an attorney's services rendered before the appointment of a trustee because the potential for duplication of effort does not then exist.[2] That said, whatever its reasons for doing so, the Fifth Circuit has chosen to apply the material benefit test to services performed by an attorney for the debtor prior to the appointment of a trustee. Even if the Court were inclined to disagree with the Fifth Circuit's adoption of such a stringent standard, *Pro-Snax* remains the law of this circuit unless and until it is overruled. *See Hill v. Hom/Ade Foods, Inc.*, 136 F.Supp.2d 605, 609 (W.D. La. 2000) ("[O]f course, this district court must follow the precedent of the Fifth Circuit."); *Weaver*, 336 B.R. at 119 (stating that district court is constrained to follow *Pro-Snax* even if it is contrary to the wording of the statute).

      Many other courts have indeed rejected the Fifth Circuit's approach, finding that, to be compensable, the services of a debtor's attorney need only have been reasonably likely to benefit the estate at the time they were rendered. *See e.g. Smith*, 317 F.3d at 926-27; *Top Grade Sausage, Inc.*,

---

    [2]Moreover, current § 330(a)(4)(A)(I) "already protects the estate from the unnecessary duplication of services." In re *Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000), *abrogated in part by Lamie*, 540 U.S. 526.

227 F.3d at 132; *Ames Dep't Stores, Inc.*, 76 F.3d at 72; In re *Mednet*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000); In re *Double J Cattle Co.*, 226 B.R. 284, 1997 WL 837762, at *4 (B.A.P. 10th Cir. Oct. 24, 1997); In re *Kennedy Mfg.*, 331 B.R. 744, 748 (Bankr. N.D. Ohio 2005); In re *Vu*, 2007 WL 1135300, at *4 (D.Md. April 17, 2007).  H&L likewise argues that the plain language of § 330 recommends the application of a reasonableness test.  First, it points to § 330(a)(3)(C), which provides that, "[i]n determining the amount of reasonable compensation to be awarded," the court must consider, among other factors, "whether the services were necessary to the administration of, *or beneficial at the time at which the service was rendered* toward the completion of, a case under this title[.]" 11 U.S.C. § 330(a)(3)(C) (emphasis added).  Second, H&L cites to § 330(a)(4)(A)(ii)(I), which requires a court to disallow "compensation for . . . services that were not . . . reasonably likely to benefit the debtor's estate[.]" According to H&L, these provisions make plain that a fee applicant need only demonstrate that its services were "reasonably likely" to benefit the estate at the time they were performed and that the "material benefit" standard articulated by the Fifth Circuit finds no place in the statutory language.  The bankruptcy court agreed, concluding that, notwithstanding *Pro-Snax*, "based on the wording in § 330(a)(3) and (4), professional fees are not to be judged in hindsight."  (R. 34).

　　This Court agrees with the bankruptcy court that it is sensible to read § 330 as manifesting an intent to allow compensation for work which, at the time it was rendered, seemed reasonably likely to benefit the debtor's estate and further, that such a reading comports more closely with the Bankruptcy Code's goal of discouraging bankruptcy professionals from fleeing to more profitable areas of the law.  But the Court does not find the material benefit test to be clearly incompatible with the text of § 330.  The holding of *Pro-Snax* and the language of § 330 can be harmonized if the

evaluation of attorney services is conceived of as a two-step inquiry.  First, the court must determine, under § 330(a)(1)(A), whether an attorney's services were "actual" and "necessary".  *Pro-Snax* is best read as placing a gloss on those terms such that services are actual and necessary, and hence compensable, only insofar as they result in an identifiable, tangible, and material benefit to the estate. *Pro-Snax*, 157 F.3d at 426.  This reading of *Pro-Snax* is consistent with the district court's opinion in that case, which indicated that the determination of whether an attorney's services benefited the estate forms a component part of whether such services were "necessary" within the meaning of § 330(a)(1)(A).  *Pro-Snax*, 212 B.R. at 839 n. 9 (citing In re *Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993)(stating that "the beneficial nature of legal services must be determined before a reasonableness inquiry may even be conducted[.]"); In re *Dixon*, 143 B.R. 671, 678 (Bankr. N.D. Tex. 1992) ("The main inquiry under § 330 is whether the post-petition services were necessary and benefitted the estate.")); *see also Quisenberry*, 295 B.R. at 865 ("Through the use of the terms 'actual' and 'necessary', section 330(a) mandates that, in order to be compensated from the estate, 'any work performed by legal counsel on behalf of a debtor must be of material benefit to the estate.'") (quoting *Pro-Snax*, 157 F.3d at 426).

Only once a threshold showing of necessity is made does the court then proceed to calculate the *amount* of reasonable fees to be awarded.  In the Fifth Circuit, this is done by computing the "lodestar" amount, which is the product of the multiplication of the reasonable number of hours expended times the prevailing reasonable hourly rate in the community.  *See Louisiana Power and Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995).  The lodestar is then adjusted based on the factors outlined in § 330(a)(3) (one of which is whether the services were beneficial at the time rendered) and the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th

Cir. 1974).[3]  *See* In re *Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005); In re *Teraforce Tech. Corp.*, 347 B.R. 838, 846 (Bankr. N.D. Tex. 2006).

Nor is § 330(a)(4)(A)(ii)(I)'s prohibition against an award of compensation for "services that were not [] reasonably likely to benefit the debtor's estate" necessarily at odds with the material benefit threshold for compensability articulated in *Pro-Snax*.  Some courts have found that § 330(a)(4)(A)(ii)(I) informs the meaning of "necessary" services under § 330(a)(1)(A) – under this reasoning, because § 330(a)(4)(A)(ii)(I) forbids fees from being awarded for services that *were not* reasonably likely to benefit the estate, "necessary" services under § 330(a)(1)(A) must be those that *were* reasonably likely to do so.  *See Double J Cattle Co.*, 226 B.R. 284, 1997 WL 837762, at *5; In re *Dragone*, 324 B.R. 445, 447 (Bankr. D. Conn. 2005).  This is a reasonable interpretation of the statute, but not one that is compelled.  Notably, § 330(a)(4)(A)(ii)(I) does not say that compensation *shall* be awarded if it is determined that services were reasonably likely to benefit the estate – it merely provides that compensation *shall not* be allowed for services that were *not* reasonably likely to do so.  In the Fifth Circuit at least, a finding that an attorney's services were reasonably likely to benefit the debtor's estate is a necessary though not sufficient precondition to an award of fees.  *Pro-Snax* adds a judicially-created hurdle for fee applicants to clear before being entitled to payment out of the estate – the applicant must show that its services materially benefited

_____

[3]  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.

17

the estate.[4]

H&L also argues that the Trustee impermissibly focuses on favorable language from *Pro-Snax* out of context and that the *Pro-Snax* Court in fact applied the very reasonableness standard it ostensibly rejected.   H&L relies on the following language contained in the last full paragraph of *Pro-Snax*:

> [t]he district court's instruction to the bankruptcy court, to consider strongly the debtor's lack of success in obtaining confirmation of the Chapter 11 plan, is consistent with the standard identified by Congress in § 330, which require that – at the time the services are performed – the chances of success must outweigh the costs of pursing the action.

*Pro-Snax*, 157 F.3d at 426.   After considering the facts and circumstances at hand, the Fifth Circuit found that "A&K should have known from the outset that the Debtor's prosecution of a Chapter 11 plan would fail, given that the Petitioning Creditors . . . filed an involuntary *Chapter 7* case against the Debtor and repeatedly informed the Debtor and the bankruptcy court that they believed the case should be administered under Chapter 7."   *Id.* (emphasis in original).   Read in isolation, these excerpts do appear to conflict with the Fifth Circuit's earlier explicit rejection of the reasonableness test.   However, H&L overlooks the fact that the Fifth Circuit explains in a footnote that the facts described in the last paragraph of the opinion would not entitle A&K to fees "*even if* we today adopted the reasonableness standard that it suggests."   *Id.* at 426 n. 17 (emphasis added); *Weaver*, 336 B.R. at 119 ("The Fifth Circuit simply said that if they had applied the reasonableness test, they still would not have allowed any fees with regard to prosecution of the Chapter 11 plan under the

---

[4] This construction does not render § 330(a)(4)(A)(ii)(I) superfluous.   One can envision certain scenarios – however unlikely – where an attorney's services actually result in a material benefit to a debtor's estate, and hence are deemed "necessary", but where such services were not reasonably likely to benefit the estate at the time they were performed.

18

facts of the case."). The panel's "by the way" application of the reasonableness test can thus only be described as obiter dictum in its true sense; as such, it has no precedential force. *See Hearn*, 376 F.3d at 453-54.

## F.    Does *Pro-Snax* Even Apply in This Case?

The bankruptcy court observed that its reading of *Pro-Snax* "may be misplaced." (R. 36). Even so, the bankruptcy court alternatively concluded that *Pro-Snax* does not even apply to this case because the material benefit standard articulated in that opinion applies only to counsel for the debtor, not to counsel for an official committee. True, if narrowly read, the holding of *Pro-Snax* applies only to a debtor's counsel prior to the appointment of a trustee; the case, after all, involved an appeal filed by a law firm representing the debtor, and the Fifth Circuit ruled that "any work performed by legal counsel *on behalf of a debtor* must be of material benefit to the estate." *Pro-Snax*, 157 F.3d at 426 (emphasis added). The question thus arises as to whether this same standard should apply when evaluating work performed by other professionals appointed under § 1103(a). More specifically, is it appropriate to judge the services of lawyers for an official committee according to whether those services resulted in a benefit to the bankruptcy estate even though such counsel owe fiduciary duties to their constituency – the committee they represent – and not to the estate?

In Chapter 11 cases the Bankruptcy Code requires the United States trustee to "appoint a committee of creditors holding unsecured claims" and allows the trustee to "appoint additional committees of creditors or equity security holders" as deemed appropriate. 11 U.S.C. § 1102. Under § 1103(c), a committee appointed under § 1102 is granted wide authority to consult with the debtor-in-possession regarding the administration of the case, to participate in the formation of plans of reorganization, and to "perform such other services as are in the interest of those represented." 11

19

U.S.C. § 1103(c).  The Code authorizes a committee to employ "one or more attorneys, accountants, or other agents, to represent or perform services for such committee."  11 U.S.C. § 1103.  After rendering services to the committee, a professional employed under § 1103 may apply to receive compensation for such services from the bankruptcy estate under § 330.

Here, the bankruptcy court recognized that counsel for a committee "works for and holds only a fiduciary duty to those whom it represents, not for the debtor or the estate generally."  (R. 37) (citing In re *PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); In re *SPM Mfg. Corp.*, 984 F.2d 1305, 1316-17 (1st Cir. 1993)).  Because committee counsel owes a fiduciary duty only to its constituency (the committee), the bankruptcy court found that allowing committee counsel to receive compensation only when its work results in a material benefit to the estate could potentially create a conflict of interest if the interests of the committee and of the estate managed to diverge.[5] (R. 37); *see also* In re *Thrifty Oil Co.*, 205 B.R. 1009, 1019 (Bankr. S.D. Cal. 1997) ("[I]f monetary benefit to the estate were the sole measure of compensability, a [committee's] professionals would be constantly placed in a conflict of interest; weighing whether to take a position adverse to the debtor will result in a denial of fees."); *Lifschultz*, 140 B.R. at 488 ("[A]llowing counsel for the committee to collect fees only when their work brings value into the estate creates a conflict of interest.").  In light of this potential for conflict, the bankruptcy court concluded that "as counsel to the Equity Committee, H&L should not be judged by the resulting benefit to the estate, but only

_____

[5]  The Bankruptcy Code expressly authorizes the court to "deny allowance of compensation for services and reimbursement of expenses of a professional person employed under 1103 . . . if, at any time during such professional person's employment . . ., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."  11 U.S.C. § 328.

as to the benefit conferred in the best interests of the committee."  (R. 37).[6]

The problem with this approach is that § 330 itself ties the compensability of a professional's services to the benefit to the estate.  Section 330(a)(4)(A) categorically provides that "the court *shall not* allow compensation for . . . services that were not – (I) reasonably likely to benefit *the debtor's estate*; *or* (II) necessary to the administration of the case."[7]  11 U.S.C. § 330(a)(4)(A)  (emphasis added).  Congress's use of the disjunctive "or" in the statute is important because it has the effect of requiring that services, to be compensable, be *both* reasonably likely to benefit the debtor's estate *and* necessary to the administration of the case.  *See Smith*, 317 F.3d at 926 ("[U]nder section 330(a)(4)(A), a bankruptcy court may award compensation if the services rendered were not unnecessarily duplicative and if the services rendered were both reasonably likely to benefit the debtor's estate and were necessary for the administration of the case."); *but see Dragone*, 324 B.R. at 447 (finding that "even if the services itemized in the Applications did not benefit the estate, they could still be allowed if they were 'necessary to the administration of the case.'").

Section 330(a)(4)(A) makes no distinction between professionals working on behalf of the debtor versus those employed by official committees.  Congress could have reasonably believed that, regardless of which entity a professional represents, in order to be entitled to compensation out of the bankruptcy estate, that professional need have performed services that were reasonably

---

[6] Despite this pronouncement, the bankruptcy court made no finding that H&L's work actually resulted in a benefit to the Equity Committee.  Instead, it determined that H&L was entitled to compensation because its services were beneficial *to the estate* at the time they were rendered.  (R. 10) ("At the time the services were rendered, they were reasonable, necessary, and beneficial to the estate."); (R. 35) (prior to December 13, 2004, H&L's "work was beneficial to the estate at the time the work was performed.").

[7] The bankruptcy court itself recognized that "the Bankruptcy Code does not allow a court to award compensation for 'services that *were not reasonably likely to benefit the debtor's estate*.'"  (R. 34) (emphasis in original).

calculated to result in a benefit to it.  Even assuming, as the bankruptcy court suggested, that

"[m]aking committee counsel responsive to constituencies outside the committee itself[] would lead

to . . . absurd results in the bankruptcy case[]", the statute is plain and unambiguous – fees simply

cannot be awarded to professionals, no matter who they represent, for services that were not

reasonably likely to benefit the estate.[8]  *Pro-Snax* teaches that unambiguous statutes must be followed

even though common sense might lead one to conclude that a different outcome is more appropriate.

*Pro-Snax*, 157 F.3d at 425.

The Fifth Circuit, of course, requires more of fee applicants than § 330 does on its face –

under *Pro-Snax* an applicant must prove that its services *actually* resulted in a material benefit to the

estate.  *Id*. at 426.  Though the holding of *Pro-Snax* was specifically directed towards attorneys for

---

[8]  Courts have taken different approaches in evaluating the services of professionals other than a debtor's attorney under § 330.  *Compare* In re *S.W.G. Realty Assocs., II, L.P.*, 265 B.R. 534, 537 (E.D. Pa. 2001) (rejecting the argument that § 330 "only contemplates the payment of fees for services rendered to the Creditors Committee in connection with the performance of the Committee's functions" in favor of a test that looks to whether the services rendered were for the benefit of the estate); In re *Keene Corp.*, 205 B.R. 690, 707-08 (S.D.N.Y. 1997) (disallowing fees and expenses incurred by committee counsel in opposing motion for the appointment of an examiner where the services "were not reasonably contemplated to confer a benefit on the estate."); In re *Standard Steel Sections, Inc.*, 200 B.R. 511, 513-14 (S.D.N.Y. 1996) (in evaluating fee application submitted by counsel for committee of unsecured creditors bankruptcy court "is expressly required to determine whether the legal services that were provided to the committee of unsecured creditors were reasonably necessary in terms of benefit to the overall estate and its orderly disposition."); In re *Senior Living Props., LLC*, 2004 WL 1683147, at *1-3 (Bankr. N.D. Tex. April 28, 2004) (considering benefit to the estate when evaluating work performed by analysts/consultants to an official committee of unsecured creditors); In re *Smith Tech. Corp.*, 1999 WL 1427681, at *9 (D. Del. Dec. 23, 1999) (finding that bankruptcy court, in disallowing fees sought by counsel for unsecured creditors committee, appropriately evaluated the benefit to the debtor's estate as opposed to the value to unsecured creditors) *with Teraforce Tech. Corp.*, 347 B.R. at 855 (finding that law firm representing unsecured creditors committee was entitled to compensation for reasonable and necessary services that resulted in a material benefit to its constituency); *Thrifty Oil Co.*, 205 B.R. at 1019 ("[S]trict application of a 'benefit to the estate' test would produce an absurd result when the [official creditors committee's] professionals were mainly engaged in efforts to allocate the limited assets of an estate in favor of its constituents."); *Lifschultz Fast Freight, Inc.*, 140 B.R. at 485 (holding that, under version of § 330 in effect prior to the 1994 Reform Act, "a professional is entitled to compensation for services that benefited the professional's client.").

the debtor, the Court perceives of no reason why the Fifth Circuit would apply a lesser standard to attorneys for an equity, or other official, committee. Thus, consistent with *Pro-Snax*, this Court holds that services rendered by counsel for an equity committee are "actual, necessary services" within the meaning of § 330(a)(1)(A) only if they resulted in an identifiable, tangible, and material benefit to the bankruptcy estate. *Id.* Even upon the satisfaction of this test, fees must be disallowed if the court finds that the services at issue were not reasonably likely to benefit the estate at the time they were performed. 11 U.S.C. § 330(a)(4)(A)(ii)(I). Because the Court finds that the bankruptcy court applied an erroneous legal standard, the case must be remanded to the bankruptcy court for reconsideration of H&L's fee application under the legal standard articulated above. *See* In re *Coston*, 991 F.2d 257, 261 n. 3 (5th Cir. 1993).[9]

## IV.  Conclusion

For the reasons stated in this order, the bankruptcy court's order awarding fees to H&L is REVERSED, and the case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[9] The Court is mindful of H&L's argument that, even if the material benefit test applied, its services did actually result in an identifiable, tangible, and material benefit to the Debtor's estate. (Appellee Brief 24-28). However, because the bankruptcy court did not evaluate H&L's fee application under the material benefit standard, the Court finds that that court should reassess H&L's fee application in the first instance using that standard.

23